IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

BLUEFIELD DIVISION

**LACOSTA STEELE,**

      **Movant,**

**v.**                                                **Case No. 1:22-cv-00444**
                                                     **Criminal Case No. 1:21-cr-00187-2**

**UNITED STATES OF AMERICA,**

      **Respondent.**

**PROPOSED FINDINGS AND RECOMMENDATIONS**

Pending before the Court are Movant LaCosta Steele's *pro se* Motion to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody, pursuant to 28 United States Code §2255, (ECF No. 71),[1] and a motion to dismiss contained in the United States' Response, (ECF No. 84). This case is assigned to the Honorable David A. Faber, United States District Judge, and by standing order was referred to the undersigned United States Magistrate Judge for submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). For the following reasons, the undersigned respectfully **RECOMMENDS** that Movant's Motion to Vacate be **DENIED**, the United States' motion to dismiss be **GRANTED,** and this matter **DISMISSED**, with prejudice, and removed from the docket of the court. Given that the undersigned conclusively **FINDS** that Steele is not entitled to the relief requested, an evidentiary hearing is not warranted. *Raines v. United States*, 423 F.2d 526, 529 (4th Cir.

---

[1] ECF Numbers come from Steele's underlying criminal case, Case No. 1:21-cr-00187-2.

1970).

## I. Relevant History

Steele is an inmate currently incarcerated at FCI Hazelton. *See* Federal Bureau of Prisons, Inmate Locator, www.bop.gov/inmateloc/. In December 2021, Steele pled guilty to distribution and attempted distribution of child pornography in violation of 18 U.S.C. § 2252A(a)(2) and 2252A(b)(1). (ECF Nos. 71, 84). Steele admitted to producing and distributing pornography of her 12 year-old sister, M.S.; this admission was corroborated by the victim's statements and by Facebook messages. (ECF Nos. 79, 84). Under the United States Sentencing Guidelines ("sentencing guidelines"), Steele's offense and criminal history would have resulted in a sentence range of 262–327 months, but the statutory maximum for her particular offense was 240 months. (ECF No. 84-2 at 12–13). The Court ultimately sentenced Steele to 180 months' imprisonment and 20 years' supervised release. (ECF Nos. 71, 84). Steele's plea agreement waived her right to collaterally attack her conviction or sentence through 28 U.S.C. § 2255, with the exception that she could raise claims for ineffective assistance of counsel. (ECF No. 84-1 at 8).

Steele filed the instant motion on October 11, 2022. (ECF No. 71). She argues that she is entitled to a sentence reduction because her trial counsel was ineffective. (*Id.*). She alleges that counsel: did not explain the charges to her; only visited her twice; failed to discuss discovery or the Presentence Investigation Report ("PSI") with her; reprimanded her for writing a letter to the Court; "told [her to] plea to 5 to 20 years" and said she would receive a sentence near the lower end of that range; advocated for a sentence of 180 months without consulting her until the day of sentencing; failed to raise her lack of criminal history at sentencing and did not discuss her personal history as a victim of abuse. (ECF Nos. 71, 86). In addition to the ineffective assistance of counsel claims, Steele

2

contends that she is entitled to relief because the Court relied on false statements, and she was subjected to inhumane conditions while housed at the Southern Regional Jail prior to sentencing. (ECF No. 71). Although she suggests that her plea was not entirely intelligent and voluntary, she does not ask to have it set aside; rather, she asks only for a reduced sentence. Steele adds in support of her request that she had never been in trouble before the charges in this case, other people lied about her to the Court, and since her conviction, she has taken steps in prison to better herself.

Steele's trial counsel was ordered to respond to Steele's allegations by affidavit, and he did so on October 25, 2022. (ECF No. 79). In addition to his affidavit, counsel attached a time sheet, which sets forth his contacts with Steele and reflects the dates and amounts of time he spent in consultation with her. (ECF No. 79-1). Upon receipt of the affidavit, the United States filed a Response, moving to dismiss the § 2255 motion and arguing that Steele has not adequately demonstrated ineffective assistance of counsel. The United States further asserts that the plea agreement waiver bars the other challenges raised by Steele to her sentence. (ECF No. 84). Steele filed three replies, (ECF Nos. 86, 89, 90), reiterating the arguments made in her original motion. She provided the Court with documentation of her religious conversion in prison, (ECF No. 87), and a record of mental health evaluations completed before she was convicted. (ECF No. 91).

## II. **Standard of Review**

A motion made pursuant to 28 U.S.C. § 2255 is a collateral attack on a conviction or sentence that was entered in a separate proceeding. To succeed on such a motion, the movant must prove that the conviction or sentence was imposed in violation of the laws or Constitution of the United States, the court imposing the sentence lacked jurisdiction, the sentence exceeded the maximum authorized by law, or the sentence was otherwise

subject to collateral attack. 28 U.S.C. § 2255. "In a § 2255 motion, the petitioner bears the burden of proving his or her claim by a preponderance of the evidence." *Merritt v. United States*, 499 F. Supp. 3d 249, 254 (E.D. Va. 2020) (citing *Miller v. United States*, 261 F.2d 546, 547 (4th Cir. 1958)).

Pursuant to the Rules Governing Section 2255 Proceedings for the United States District Courts ("Rules"), the court should conduct a preliminary review of the motion. *See* Rule 4. The court may then order the respondent to answer the motion and may authorize the parties to conduct discovery and direct the parties to expand the record as necessary to properly assess the validity of the motion. *See* Rules 5, 6, & 7. Once these steps are completed, the court must review the answer, transcripts, records of prior proceedings, and any other materials submitted to determine whether an evidentiary hearing on the motion is warranted. *See* Rule 8(a).

The decision of whether to conduct an evidentiary hearing is generally left to the sound discretion of the district court, although there remains "a category of petitions, usually involving credibility, that will require an evidentiary hearing in open court." *Raines v. United States*, 423 F.2d 526, 530 (4th Cir. 1970); *see also United States v. Hall*, 771 F. App'x 226, 227 (4th Cir. 2019); *United States v. Runyon*, 994 F.3d 192, 208 (4th Cir. 2021); *United States v. Velascu,* 429 Fed. Appx. 236, 237 (4th Cir. 2011). This is particularly true when "competing sworn statements offer differing factual allegations that 'relate primarily to purported occurrences outside of the courtroom and upon which the record could, therefore, cast no real light.'" *United States v. Underwood,* No. 20-6782, 2022 WL 186054, at *1, n.2 (4th Cir. Jan. 20, 2022) (quoting *United States v. White,* 366 F.3d 291, 302 (4th Cir. 2004)). Nonetheless, the mere presence of conflicting affidavits does not automatically require an evidentiary hearing. When the motions, files, and

records in the case conclusively show that the movant is not entitled to relief, the Court may deny the § 2255 motion without an evidentiary hearing. *Raines,* 423 F.2d at 529. Furthermore, "vague and conclusory allegations contained in a § 2255 petition may be disposed of without further investigation by the District Court." *United States v. Dyess*, 730 F.3d 354, 359 (4th Cir. 2013).

## III. Discussion

### A. Ineffective Assistance of Counsel

Steele's primary argument for relief is that her trial counsel was ineffective. (ECF No. 71). She alleges that he did not adequately discuss her case with her, misled her in accepting the plea agreement, and failed to raise her minimal criminal history at sentencing. (*Id.*) The Sixth Amendment to the United States Constitution guarantees every criminal defendant "the right to the effective assistance of counsel." *Strickland v. Washington,* 466 U.S. 668, 680 (1984). Where a defendant alleges ineffective assistance of counsel as a ground for relief, the defendant must prove that "counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result." *Id.* at 686. Under *Strickland,* the test for ineffective assistance of counsel has two prongs: a criminal defendant must show that her counsel's performance was deficient, and that this deficiency prejudiced her defense. *Id.* at 687. The burden rests on the defendant to satisfy both prongs, and "a failure of proof on either prong ends the matter." *United States v. Roane,* 378 F.3d 382, 404 (4th Cir. 1994).

To establish deficiency, the defendant must show that counsel's representation fell below an objective standard of reasonableness. *Strickland,* 466 U.S. at 687-88. When evaluating counsel's performance under the first prong of *Strickland,* "[j]udicial scrutiny

5

of counsel's performance must be highly deferential." *Id.* at 689. Thus, the "court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance … [and] that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* (internal quotation marks omitted). The inquiry under *Strickland* is "whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom." *Harrington v. Richter,* 562 U.S. 86, 105 (2011).

To demonstrate prejudice, the defendant must show that "counsel made errors so serious that counsel was not functioning as the counsel guaranteed … by the Sixth Amendment." *Id.* at 104 (quoting *Strickland,* 466 U.S. at 687). It is insufficient for the defendant "to show that the errors had some conceivable effect on the outcome of the proceeding," because "[v]irtually every act or omission of counsel would meet that test." *Strickland,* 466 U.S. at 693. Rather, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

When a criminal defendant has entered a guilty plea, the analysis on collateral review focuses heavily on the Rule 11 colloquy, because by entering a guilty plea, the defendant "has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged." *Tollett v. Henderson,* 411 U.S. 258, 267 (1973). Therefore, a guilty plea "represents a break in the chain of events which has preceded it in the criminal process." *Id.* Statements made during a hearing to accept a guilty plea are afforded a strong presumption of veracity and subsequent attacks that contradict these statements may generally be dismissed as frivolous. *U.S. v. Lemaster,* 403 F.3d 216, 221-222 (4th Cir.

6

2005). As the Fourth Circuit explained:

> [A] defendant's solemn declarations in open court … carry a strong presumption of verity … because courts must be able to rely on the defendant's statements made under oath during a properly conducted Rule 11 plea colloquy. … Thus, in the absence of extraordinary circumstances, the truth of sworn statements made during a Rule 11 colloquy is conclusively established, and a district court should, without holding an evidentiary hearing, dismiss any § 2255 motion that necessarily relies on allegations that contradict the sworn statements.

*Id.* Consequently, a criminal defendant is precluded from raising alleged constitutional deprivations that occurred prior to pleading guilty and "may only attack the voluntary and intelligent character of the guilty plea" by demonstrating that her counsel's performance was inadequate under the Sixth Amendment. *Tollett,* 411 U.S. at 267; *see also Fields v. Attorney General of State of Md.*, 956 F.2d 1290, 1296 (4th Cir. 1992) ("A guilty plea does not bar collateral review of allegations of ineffective assistance of counsel in so far as the alleged ineffectiveness bears on the voluntariness of the guilty plea."). In other words, the movant under § 2255 must not only rebut the presumption that counsel performed within the wide range of reasonable professional competence, but must also demonstrate that "there is a reasonable probability that, but for counsel's errors, [movant] would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart,* 474 U.S. 52, 59 (1985).

Steele makes a variety of claims against her trial counsel, considered in turn. None of her allegations establish that her counsel was constitutionally deficient. First, Steele claims that her trial counsel, Wesley Page, failed to adequately discuss her case with her, implying that her guilty plea was made unknowingly. (ECF No. 71 at 4). She alleges that Page did not explain her charges, did not review discovery or the PSI with her, and only visited her twice. (*Id.*). She also states that, when she attempted to raise this issue to the

Court by writing a letter, Page reprimanded her. (*Id.*). These factual allegations, that Page failed to explain her case and review documents with her, are contradicted by Page's affidavit and the remaining record, *see Rivera-Rojas v. United States*, Civil No. 13–1072(PG), 2015 WL 4645597, at *6–7 (D.P.R., Aug. 5, 2015); *Mitchum v. United States,* No. CIV.A. 4:12-1686-TLW, 2012 WL 4479122, at n.4 (D.S.C. Sept. 28, 2012), and the claim concerning the letter has no basis in law, as discussed below. Accordingly, the undersigned **FINDS** that Steele's guilty plea was entered intelligently as is plainly established by the record, including Steele's sworn testimony at the Rule 11 colloquy.

At her plea hearing, Steele expressed that she understood everything included in the plea agreement, that she and Page had discussed how the sentencing guidelines might apply to her case, that Page had satisfactorily answered all of her questions, and that she had no second thoughts about pleading guilty. (ECF No. 84-3 at 10, 12–14, 27). These statements made under oath defeat the unsupported allegation in her motion that counsel did not explain her case to her in terms she understood. (ECF No. 71 at 4). Page's unrefuted affidavit also shows that he adequately discussed Steele's case with her.

Page stated in his affidavit that he met with Steele six times, not including meetings before or after hearings or meetings with probation officers. (ECF No. 79 at 4). Although Steele initially claimed Page met with her only twice, she changed this allegation after Page's affidavit was submitted, agreeing that they had met six times. (ECF No. 89 at 1). According to Page, these meetings involved examining discovery, discussing plea offers, and reviewing the final proposed plea agreement. (ECF No. 79 at 4). Page explained the charges to Steele when they met to prepare for her arraignment; had she expressed any confusion, he would have provided clarification. (*Id.* at 5). At sentencing and in his affidavit, Page stated that he had reviewed the PSI with Steele. (ECF Nos. 79 at 5, 84-2 at

3). Page's affidavit and statements at sentencing, coupled with Steele's statements at the plea hearing, show that Page adequately discussed Steele's case with her.

Steele argues in her motion that Page acted unreasonably when he "reprimanded" her for writing a letter to the Court. (ECF No. 71 at 4). Page explained in his affidavit that Steele had written a letter to the Court in November 2021, which was placed on the docket under seal. (ECF No. 79 at 6). While Page does not remember everything he said to Steele about the letter, he believes that he likely advised her against contacting the Court directly because she was represented by counsel. (ECF No. 79 at 6). Criminal defendants who are represented by counsel must communicate through their attorneys, as the Court explained in its order sealing Steele's letter. (ECF No. 41). Page correctly advised Steele not to write to the Court; that advice does not support a claim for ineffective assistance of counsel. In any event, Steele's letter was written well before she pleaded guilty, and it concerned her confusion about why she had not been released on bond, given that she "thought everyone was entitled to a bond." (ECF No. 42). Thus, the letter and Page's comments to her about the letter do not in any way relate to or undermine the validity of Steele's guilty plea.

Some of Steele's allegations implicate the voluntariness of her plea. She claims that Page "told [her to] plea to 5 to 20 years" and assured her that her sentence would be toward the lower end of that range. (ECF No. 71 at 7). In contrast, Page stated in his affidavit that he never directs defendants to sign a particular plea agreement, he merely explains the benefits and risks of accepting or rejecting the offer. (ECF No. 79 at 7–8). Steele essentially confirms Page's statement further down in her motion when she wrote that "[Page] told me [the] best thing for me to do is plead guilty," suggesting that Page did not actually instruct her to sign the plea agreement but merely gave her advice. (ECF No.

9

71-1 at 4). Steele stated at the plea hearing that she understood that she had the absolute right to plead not guilty and that her plea agreement exposed her to a maximum penalty of 20 years' imprisonment. (ECF No. 84-3 at 11, 14). She also said that she understood that her guilty plea would be binding even if she received a more severe sentence than she expected, and she understood that the Court retained complete discretion over sentencing based on the PSI. (*Id.* at 14–15). Steele also signed the plea agreement and stated in Court that she understood and agreed to all its contents, which included an acknowledgement that no other promises or inducements had been made to her except those contained in the agreement. (ECF Nos. 84-1 at 10, 84-3 at 10). The undersigned **FINDS** that nothing in the record suggests that Steele was misled into accepting the plea agreement or that her plea was otherwise involuntary.

Next, Steele contends that Page was ineffective by seeking a sentence of 180 months without discussing it with her before the day of sentencing. (ECF No. 71 at 7). To establish prejudice in the context of sentencing, a movant must demonstrate a reasonable probability that her sentence would have been more lenient had counsel's performance not been deficient. *See Glover v. United States*, 531 U.S. 198, 202–04 (2001); *Royal v. Taylor,* 188 F.3d 239, 249 (4th Cir. 1999). If the movant fails to meet this burden, the "reviewing court need not even consider the performance prong." *United States v. Rhynes*, 196 F.3d 207, 232 (4th Cir. 1999), *opinion vacated on other grounds*, 218 F.3d 310 (4th Cir. 2000). Steele has failed to make any showing that a more lenient sentence was reasonably probable. Considering that the sentencing guidelines range significantly exceeded the statutory maximum, and the sentenced imposed by the Court was a downward variance of sixty months from the statutory maximum, the undersigned **FINDS** that Steele very likely received the most lenient sentence available to her.

Even if Page did not discuss a specific recommendation with Steele before the day of sentencing, the Sentencing Memorandum requested a downward variance, and when they discussed the recommendation of 180 months before her sentencing hearing, she raised no objections. (ECF No. 79 at 8-9). Steele's co-defendant, Nicholas Icenhour, was sentenced earlier on the same day, (*Id.* at 8), and it was reasonable for Page to wait on the outcome of Icenhour's sentencing to decide on a specific recommendation. Certainly, Icenhour's sentence gave some insight into the Court's inclinations towards Steele's case. Icenhour received a sentence of 270 months' imprisonment—seven and half years longer than Steele's sentence. Clearly, Page's recommendation of 180 months was more than reasonable in view of Icenhour's sentence. Naturally, any defendant facing the possibility of imprisonment will want their attorney to advocate for the shortest possible sentence, but arguing for too short of a sentence is often not the best strategy. Where a judge is predisposed towards a harsher sentence, as is common when the offense involves the sexual abuse or exploitation of children—in this case, Steele's own sibling—an attorney arguing that his client deserves a very short sentence runs the risk of losing credibility, forfeiting the opportunity to persuade the judge to give a lesser sentence. Therefore, the undersigned **FINDS** that it was reasonable for Page to argue for a sentence of 180 months, which still constituted a substantial downward variance from the sentencing guidelines, the statutory maximum, and from the co-defendant's sentence.

Steele's final ineffective assistance claim is that Page failed to argue that Steele's criminal history entitled her to a lesser sentence. (ECF No. 71 at 8). Prior to this conviction, Steele's criminal record only featured a few minor traffic violations. (ECF No. 68 at 13). However, her criminal history was already considered in the sentencing guidelines— her record placed her in the lowest possible criminal history category, which

directly determined the applicable guidelines range for her sentence. (ECF Nos. 68 at 13, 84 at 12–13). Page believed that focusing on Steele's criminal history could be seen as an attempt to minimize responsibility, (ECF No. 79 at 10), and so he instead chose to focus his arguments on Steele's personal history, which was not included in the initial guidelines calculation, and which gave the Court a reason to sympathize with Steele despite her offense. (ECF Nos. 79, 84-2). Steele also alleges in one of her replies that Page failed to raise her history of sexual abuse, (ECF No. 86 at 3), but this allegation is clearly contradicted by the record. Both Page and the Court directly addressed Steele's personal history as a victim of child sexual abuse. (ECF No. 84-2 at 15, 21–22). Steele's assertion that Page failed to raise her personal history is simply untrue. Rather, Page used Steele's childhood as the primary argument that she deserved a downward variance, and this argument was ultimately successful, as the Court stated that its downward variance was based on Steele's own sexual abuse, as well as the undue influence by her co-defendant. (*Id.*). The undersigned **FINDS** that Page acted reasonably in choosing to discuss Steele's personal history as a victim rather than her benign criminal history.

Even assuming Steele could show that her trial counsel was deficient, her claims of ineffective assistance would still fail, because she cannot establish that any deficiencies prejudiced her case. During a voluntary interview with federal agents, Steele admitted to producing and distributing child pornography featuring M.S., Steele's 12 year-old sister. (ECF No. 79 at 3). This confession was corroborated by the victim's statements and by Facebook messages. (ECF Nos. 79 at 5, 84 at 15, 84-3 at 21). The United States would have had a very strong case against Steele on all four counts of the original indictment, and, regardless of her trial counsel's actions, it was clearly in Steele's best interest to plead guilty to the one count of distribution and have the remaining counts dismissed. The plea

agreement significantly reduced Steele's potential sentence, (ECF No. 84-3 at 10), making it highly unlikely that she would have rejected the agreement and gone to trial. Therefore, the undersigned **FINDS** that the actions of Steele's trial counsel did not prejudice her case, and she has not proven that her Sixth Amendment right to counsel was violated.

### *B. Other Claims*

Apart from her claims of ineffective assistance of counsel, Steele also claims that the sentencing court relied on various false statements regarding her family relationships. (ECF Nos. 71 at 5, 71-1 at 3–4). The undersigned **FINDS** that this challenge to her sentence is barred by the waiver contained in her plea agreement, which only allows Steele to attack her sentence based on ineffective assistance of counsel. (ECF No. 84-1 at 7–8). Because the record establishes that Steele's plea was knowing and voluntary, (ECF No. 84-3 at 25), the waiver applies, and she may not challenge her sentence by raising these alleged misrepresentations. *See United States v. Lemaster*, 403 F.3d 216, 223 (4th Cir. 2005) (enforcing plea agreement waiver of collateral attack rights where plea agreement was knowing and voluntary). However, had Steele's plea agreement not barred this challenge, her allegations are not supported by the record. Steele claims that the United States misrepresented various familial relationships, stating that Steele had three children when she only has two, that her sister, the victim, was her daughter, and that Steele's great uncle was her biological father. (ECF No. 71 at 5). This is contradicted both by Steele's later filings and by court transcripts. Steele states in another filing that the United States wrongly claimed that the victim, M.S., was her sister when M.S. was actually her half-sister. (ECF No. 86 at 2). During the plea hearing and sentencing hearing, the Assistant United States Attorney and Sentencing Court stated only that M.S. was Steele's sister and never referred to M.S. as Steele's daughter. (ECF No. 80, 81). The Court

accurately applied the sentencing guidelines by increasing Steele's offense level for her relationship to the victim. (ECF No. 84-3 at 13). The sentencing guidelines provide that a two-level increase applies if the defendant is a parent, relative, or legal guardian of the victim or otherwise acts as a caretaker of the victim. U.S.S.G. § 2G2.1. There is no legal precedent suggesting that this enhancement only applies to full-blood relatives. *See United States v. Alfaro,* 555 F.3d 496, 500 (5th Cir. 2009) ("[T]he commentary to § 2G2.1 indicates that the enhancement should be applied broadly and applies to more than mere legal caretakers of a minor."); *United States v. Lester*, No. 19-4310, 2021 WL 138863 (4th Cir. Jan. 15, 2021) (applying enhancement where defendant was victim's step-uncle). Additionally, the PSI established that Steele at times acted as a caregiver to the victim, (ECF No. 68 at 9), which would independently satisfy the conditions of § 2G2.1. *See United States v. Bentley*, 492 F. Supp. 2d 1050, 1057 (N.D. Iowa 2007), aff'd, 561 F.3d 803 (8th Cir. 2009) (applying § 2G2.1 enhancement where defendant was victim's temporary caretaker as a babysitter). The other alleged misrepresentations Steele mentions—misstating her father's identity and the number of children she has—are not referenced at any point during the plea hearing or sentencing hearing, and there is no evidence that the Court relied on these misrepresentations at sentencing. (ECF Nos. 80, 81). Whatever small factual discrepancies may have existed, the undersigned **FINDS** that those errors did not affect her sentence, and she would not be entitled to resentencing on those grounds.

Steele also argues her experiences at the Southern Regional Jail, where she was housed before sentencing, entitle her to a sentence reduction; she alleges that the Jail had no running water for days at a time, that raw sewage had flooded the toilets for two weeks, that prison staff neglected to treat Steele's diabetes, and that she was attacked by other

14

inmates. (ECF No. 71-1 at 1–2). If Steele's claims regarding the conditions at the Southern Regional Jail are true, the inmates at the Southern Regional Jail may be entitled to damages or an injunction. *See Budd v. Motley,* 711 F.3d 840, 843 (7th Cir. 2013) (listing cases in which courts have found that unhygienic conditions constitute a violation of the Eighth Amendment); *but see Shakka v. Smith*, 71 F.3d 162, 168 (4th Cir. 1995) (finding no constitutional violation where inmate was denied running water for a period of three days). However, past exposure to inhumane prison conditions does not entitle a prisoner to a sentence reduction. A § 2255 motion allows federal prisoners to challenge a conviction or sentence where the sentence itself is unconstitutional or unlawful or was imposed by a court without jurisdiction. 28 U.S.C. § 2255 (a). It does not allow a federal prisoner to challenge their sentence based on conditions of pretrial confinement. There is no legal basis to support Steele's argument that she is entitled to a sentence reduction based on the conditions at the Southern Regional Jail. Similarly, while Steele's efforts at rehabilitation since incarceration are commendable, they simply do not provide grounds for resentencing. *Braggs v. United States*, No. 7:07-CR-42-FL-1, 2020 WL 1934960, at *2 (E.D.N.C. Apr. 22, 2020). Because all of Steele's claims in her § 2255 motion clearly lack merit, the undersigned **FINDS** that an evidentiary hearing is not warranted, and the court should dismiss her motion.

### IV.   Proposal and Recommendations

For the reasons set forth above, the undersigned respectfully **PROPOSES** that the presiding District Judge accept and adopt the findings proposed herein and **RECOMMENDS** that Respondent's motion to dismiss, (ECF No. 84), be **GRANTED,** Steele's Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255, (ECF No. 71), be **DENIED,** and that this civil action be **DISMISSED,** with prejudice,

and removed from the docket of this Court.

The parties are notified that this "Proposed Findings and Recommendations" is hereby **FILED**, and a copy will be submitted to the Honorable David A. Faber, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and three days (if received by mail) from the date of filing this "Proposed Findings and Recommendations" within which to file with the Clerk of this Court, specific written objections, identifying the portions of the "Proposed Findings and Recommendations" to which objection is made and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be provided to the opposing parties, Judge Faber, and Magistrate Judge Eifert.

The Clerk is instructed to provide a copy of this "Proposed Findings and Recommendations" to Movant and counsel of record.

**FILED**: March 22, 2023

Cheryl A. Eifert
United States Magistrate Judge